UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| DANIEL G. JONES, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:13-cv-340 |
| ) | |
| v. ) | Honorable Robert J. Jonker |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |
| ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On July 23, 2009, plaintiff filed his applications for benefits. He alleged a July 1, 2007, onset of disability. (Page ID 172-81). Because plaintiff "had been employed full time at Bentler Automotive up until May 7, 2009," he amended his claims to allege a May 8, 2009, onset of disability.[1] (Page ID 66, 300; *see* Page ID 230, 237). Plaintiff's claims were denied on initial review. (Page ID 104-07). On December 1, 2011, he received a hearing before an administrative law judge (ALJ), at which he was represented by counsel. (Page ID 62-92). On December 16, 2011, the ALJ issued her decision finding that plaintiff was not disabled. (Op., Page ID 42-55). On February 11, 2013, the Appeals

---

[1]SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, August 2009 is plaintiff's earliest possible entitlement to SSI benefits.

Council denied review (Page ID 32-34), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision. Plaintiff argues that the Commissioner's decision should be overturned on the following grounds:

1. The ALJ committed reversible error by not giving controlling weight to the opinions of Psychologist Steven De Groot;

2. The ALJ committed reversible error by failing to balance the factors set forth in 20 C.F.R. § 404.1527(c); and

3. The ALJ committed reversible error by giving controlling weight to a non-examining source.[2]

(Plf. Brief at 2, docket # 13, Page ID 466). I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is

---

[2]Plaintiff attempts to raise a fourth argument in his reply brief that the ALJ "fail[ed] to fully develop the record." (Reply Brief 2, docket # 15, Page ID 493). It is well established that a reply brief is not the proper place to raise new arguments. *See e.g., Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). The issue is waived because it was never included in plaintiff's statement of issues. *See Ealy v. Commissioner*, 594 F.3d 504, 513 (6th Cir. 2010); *see also Nichols v. Commissioner*, No. 1:12-cv-995, 2014 WL 4259445, at * 9 (W.D. Mich. Aug. 28, 2014) (collecting cases). Even if the issue had not been waived, it is meritless. The ALJ's special duty to *pro se* parties to develop the record does not extend to plaintiff, because he was represented by an attorney at the hearing. *See Culp v. Commissioner*, 529 F. App'x 750, 751 (6th Cir. 2013); *Kelly v. Commissioner*, 314 F. App'x 827, 831 n. 1 (6th Cir. 2009); *Wilson v. Commissioner*, 280 F. App'x 456, 459 (6th Cir. 2008).

defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from May 8, 2009, through the date of the ALJ's decision. (Op. at 3, Page ID 44). Plaintiff had not engaged in substantial gainful activity on or after May 8, 2009. (*Id.*). Plaintiff had the following severe impairments: depression, post-traumatic stress disorder, and status post right ankle fusion. (*Id.*). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (*Id.* at 4, Page ID 45). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can perform simple, unskilled, routine, and repetitive work. However, the claimant cannot be required to perform assembly line work. Additionally, the claimant can have occasional contact with supervisors and coworkers, but no contact with the general public.

(*Id.* at 6, Page ID 47). The ALJ found that plaintiff's testimony regarding his subjective limitations was not fully credible.

> In assessing the claimant's credibility, the undersigned first notes that the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Specifically, the record reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms. Furthermore, the record establishes that the claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the amended alleged onset date, when the claimant continued to work for three to four years following the death of his estranged spouse. The fact that the impairments did not prevent the claimant from working at the time strongly suggests that they would not currently prevent work.
>
> Additionally, the claimant made inconsistent statements about the record. For example, the claimant indicated on forms submitted in connection with the application that he was laid off from his prior job, but testified at the hearing that he was fired for missing too much work (Ex. 16E). As noted above,[3] the claimant has made inconsistent statements regarding

---

[3] Earlier in her opinion, the ALJ had noted that, in October 2009, plaintiff reported to Psychologist Robert Baird that he had never undergone mental health counseling. (Op. at 7, Page ID 48; *see* Page ID 346). Plaintiff did not file any treatment notes generated by Psychologist De

-4-

>  whether he previously received mental health counseling and the duration of counseling he may have received. Although the inconsistent information provided by the claimant may not be the result of a conscious intent to mislead, such inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable.
>
>  The evidence raises other questions about the claimant's credibility. For instance, the record establishes that the claimant received unemployment benefits after the alleged amended onset date (Ex. 3D; 5D; 10D). In order to qualify for such benefits, applicants typically must affirm that they are capable of working. Thus, the claimant apparently claimed an ability to work when applying for another form of government benefits, while currently alleging an inability to work during the same period of time, which brings into question the reliability of the claimant's allegations generally. The undersigned stresses that the claimant's receipt of unemployment benefits is just one factor considered in assessing the claimant's credibility, and not determinative of an unfavorable finding by itself.
>
>  The claimant has also described daily activities that are not limited to the extent one would expect given his allegations of disabling symptoms. For example, the claimant has noted caring for his three disabled children without assistance, doing laundry, caring for his personal hygiene, taking his children to their medical appointments, helping his children with their homework, and watching televison (Ex. 4E; 8E; 2F/1-3; 5F/4; 11F/1-2). A third party function report submitted by the claimant's girlfriend, Melissa Williams, generally corroborates these activities of daily living (Ex. 5E). Because of these inconsistencies, the undersigned finds that the claimant's statements concerning the intensity, persistence and limiting effects of his alleged symptoms are not fully credible.

(*Id.* at 8-9, Page ID 49-50). The ALJ found that plaintiff could not perform any past relevant work. (*Id.* at 12, Page ID 53). Plaintiff was 40-years-old as of the date of his initial alleged onset of disability date, 42-years-old as of his amended onset of disability date, and 45-years-old on the date of the ALJ's decision. Thus, at all times relevant to his claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (*Id* at 7, 12, Page ID 48, 53). Plaintiff has at least a high school education and is able to communicate in English. (*Id.* at 12, Page ID 53). The ALJ found

---

Groot in support of his claims for DIB and SSI benefits. (Op. at 7, Page ID 48). Plaintiff's treating physician, Karla Hemphill Harris, D.O., described plaintiff as alert, oriented, and negative for psychiatric symptoms such as unusual anxiety or depression. (Op. at 7-8, Page ID 48-49; *see* Page ID 436, 451). Plaintiff "was employed full time at Bentler Automotive up until May 7, 2009." (Page ID 66). He testified that he had not undergone any mental health counseling since losing his job in May 2009. (Op. at 8, Page ID 49; *see* Page ID 72).

that the transferability of jobs skills was not material to a determination of disability. (*Id.* at 13, Page ID 54). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age with his RFC, education, and work experience, the VE testified that there were approximately 80,000 jobs in Michigan's Lower Peninsula that the hypothetical person would be capable of performing. (*Id.*; *see* Page ID 88-91). The ALJ found that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ found that plaintiff was not disabled. (Op. at 13-14, Page ID 54-55).

**1.**

Plaintiff argues that the ALJ committed reversible error by not giving "controlling weight" to the opinions of Psychologist Steven De Groot. (Plf. Brief at 8-11, Page ID 472-75; Reply Brief at 1-3, Page ID 492-94 ). The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because

they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).[4]

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013) (A treating physician's medical opinion is entitled to controlling weight where "two conditions are met: (1) the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" (citing 20 C.F.R. § 404.1527(c)(2)). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of his symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see*

---

[4]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

*also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

It was plaintiff's burden to present evidence establishing his disability. *Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff elected not to file any treatment records from Psychologist De Groot in support of his claims for DIB and SSI benefits.

Instead, he filed two letters from the psychologist[5] and two RFC questionnaires that De Groot completed for plaintiff's attorney. (Page ID 396-401, 428, 453-55). Plaintiff is not in a position to complain that the ALJ failed to give "controlling weight" to De Groot's unsupported opinions. *See Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986); *see also Weeks v. Shalala*, No. 94-5948, 1995 WL 521156, at * 3 (6th Cir. Sept. 1, 1995) (No deference is warranted where a medical professional offers a series of conclusions and the ALJ is deprived of the underlying clinical data, which may or may not support those conclusions.) When plaintiff elected to deprive the ALJ of the underlying treatment records, he stripped away the foundation on which the ALJ could have given De Groot's opinions controlling weight based on a documented treatment history.

De Groot's letter dated September 15, 2010 (Page ID 396), advised plaintiff's attorney that he would need to obtain releases from other members of plaintiff's family because the services plaintiff received were "in conjunction with other family members."[6] (*Id.*). There is no evidence that plaintiff's attorney attempted to obtain the necessary releases. If he did obtain the documents pursuant to releases, he gave no explanation why the documents were not filed in support of plaintiff's claims for DIB and SSI benefits. De Groot's letter stated: "[T]he information that this

---

[5]This court's review of the Commissioner's decision is restricted to the evidence presented to the ALJ. *See Jones v. Commissioner*, 336 F.3d at 478. De Groot's letter to plaintiff's attorney dated August 9, 2011, is date stamped as having been received by the Social Security Administration more than a month after the ALJ's decision. (Page ID 458-49). The letter cannot be considered in the process of determining whether the ALJ correctly applied the law and her decision is supported by substantial evidence. The letter is mentioned herein only for the sake of clarity that it is *not* being considered. In addition, defendant's references to this letter (Def. Brief at 3, 7 n.3, Page ID 481, 485) have been disregarded.

[6]Plaintiff testified that his wife died in 2004. (Page ID 78). He stated that he has three children, ages 16, 13, and 10, and two of his three children receive SSI benefits. (Page ID 67-68, 71-75).

-9-

office possesses on Mr. Jones relate more to family issues, rather th[a]n his attempt to seek Social Security." (*Id.*). Although this statement is cryptic, it suggests that the files were kept under the names of plaintiff's children rather than in his name. That plaintiff did not "warrant [his] own file is evidence that plaintiff's condition was not severe enough to warrant any significant level of treatment." *Charlton v. Commissioner*, No. 1:11-cv-992, 2013 WL 5806169, at * 13 n.2 (W.D. Mich. Oct. 29, 2013).

De Groot's letter dated July 14, 2011, is likewise devoid of supporting treatment records which could provide a foundation for the conclusions he offered. The psychologist asserted that there was no initial treatment date for plaintiff because the "counseling was largely family counseling in nature." (Page ID 428). He conceded that plaintiff "had not had a formal appointment in this office for a while" (*Id.*), but gave no details regarding dates when plaintiff had received "formal" counseling or the substance of any such counseling. Psychologist De Groot offered a diagnosis of post-traumatic stress disorder and gave plaintiff a Global Assessment of Functioning (GAF) score of 46, with a highest GAF in the last year of 48. (*Id.*).

GAF scores are subjective rather than objective assessments and are not entitled to any particular weight. *See Kornecky v. Commissioner*, 167 F. App'x 496, 511 (6th Cir. 2006). "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's

mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n. 7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM–IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational functioning." *Kornecky*, 167 F. App'x at 511; *see Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011). "Significantly, the SSA has refused to endorse the use of the GAF scale[.]" *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar. 31, 2011).

"[T]he latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) no longer includes the GAF scale." *Davis v. Commissioner*, No. 1:13-cv-1556, 2014 WL 4182737, at * 8 (N.D. Ohio Aug. 21, 2014); *see Finley v. Colvin*, No. 12-7908, 2013 WL 6384355, at * 23 n. 9 (S.D.W.V. Dec. 5, 2013) ("It should be noted that in the latest edition of the [DSM], the GAF scale was abandoned as a measurement tool."). "'It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity ... questionable psychometrics in routine practice.'" *Brown v. Colvin*, No. 12-513, 2013 WL 6039018, at * 7 n. 3 (E.D. Wash. Nov.14, 2013) (quoting DSM, 16 (5th ed., 2013). "Moreover, a GAF score reflected an individual's functioning at a particular moment in time; one score was generally not helpful in determining whether Plaintiff's alleged impairment lasted at least 12 months, as is required to be considered disabled. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a)." *Davis v. Commissioner*, 2014 WL 4182737, at * 8.

Plaintiff's decision not to provide the underlying treatment notes stripped De Groot's subjective GAF scores of whatever persuasive value they may have had because the ALJ was deprived of the opportunity to compare the level of restriction suggested by the GAF score to the

level of restriction the psychologist recorded in his progress notes. *Cf. Gilabert v. Commissioner*, 396 F. App'x 652, 655 (11th Cir. 2010); *Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010); *Foreman v. Colvin*, No. 1:12-cv-2120, 2013 WL 3200615, at * 11 (N.D. Ohio June 24, 2013); *Smith v. Colvin*, No. 3:11-cv-651, 2013 WL 1622281, at * 12 (M.D. Tenn. Apr. 15, 2013).

Psychologist De Groot's RFC questionnaire responses dated January 31, 2011 (Page ID 397-401), and November 7, 2011 (Page ID 453-55), fare no better. The responses suggest listing-level impairments, but there is no evidence that plaintiff has ever been hospitalized for any mental impairment. The ALJ found that the psychologist's conclusory questionnaire responses were not persuasive:

> In January 2011, Dr. De Groot completed a form evaluating the claimant's ability to perform mental work-related activities. Dr. De Groot stated that the claimant was "unable to maintain focus/attention for any length of time due to significant anxiety in addition to the death of his wife which has left him to raise his four daughters[7] by himself." Dr. De Groot also noted that the claimant's ability to deal with "everyday psychosocial stressors" was "nonexistent" (Ex. 10F/3). In July 2011, Dr. De Groot stated that he had previously assigned the claimant with a GAF score of 46, which suggests serious symptoms or any serious impairment in social, occupational, or school functioning (Ex. 14F; DSM-IV-TR, p. 34). In November 2011, Dr. De Groot completed a second form evaluating the claimant, where he indicated the claimant had several marked to extreme limitations (Ex. 10F; 20F). Dr. De Groot stated that "it has become very clear that (the claimant) has decompensated significantly." Dr. De G root opined that he did not believe the claimant would be "capable of holding any job." (Ex. 20F/4). Statements that a claimant is "disabled" or "incapable of holding a job," or the like, are not medical opinions but are administrative findings dispositive of the case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner who cannot abdicate the statutory responsibility to determine the ultimate issue of disability. Opinions on issues reserved to the Commissioner can never be entitled to controlling weight, but must be carefully considered to determine the extent to which they are supported by the record as a whole or contradicted by persuasive evidence (SSR 96-5p). The undersigned gives very little weight to Dr. De Groot's opinion because it is without substantial support from the

---

[7]It is assumed for present purposes that the discrepancy between the four children mentioned in De Groot's RFC questionnaire response and the three children mentioned in plaintiff's testimony and elsewhere (*see e.g.*, Page ID 67-68, 346, 373) was a simple oversight on De Groot's part and it is of no consequence.

  medical evidence or the record as a whole. In assigning very little weight, the undersigned notes that Dr. De Groot declined to turn over his own treatment notes, stating that his prior relationship with the claimant related "more to family issues rather than his attempts to seek Social Security" (Ex. 9F). Without support from his own treatment notes, Dr. De Groot's opinion is quite conclusory and unpersuasive.

(Op. at 10-11, Page ID 51-52). I find that the ALJ correctly applied the law and gave good reasons for the weight given to Psychologist De Groot's opinions.

**2.**

Plaintiff argues that the ALJ committed reversible error "by failing to balance the factors set forth in 20 C.F.R. § 404.1527(c)" in the weight he gave to Psychologist De Groot's opinions. (Plf. Brief at 11-12, Page ID 475-76). The ALJ considered the relevant factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c). (Op. at 6, 10, Page ID 47, 51). Plaintiff's decision against filing De Groot's underling treatment notes effectively undermined the ALJ's ability to scrutinize the length of De Groot's treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship. The "supportability" factor is at the heart of the ALJ's decision. The regulations state, "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give to that opinion." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). "Without support from his own treatment notes, Dr. De Groot's opinions [were] quite conclusory and unpersuasive." (Op. at 11, Page ID 52). I find no error.

**3.**

Plaintiff argues that the ALJ failed to give sufficient weight to the opinions of two consultative examiners, Psychologists Robert Baird and Richard King, and that she gave too much weight to the opinions of Psychologist William Schirado, a non-examining medical consultant. (Plf.

Brief at 9-14, Page ID 473-78). King, Baird, and Schirado were not treating psychologists.[8] *See Smith v. Commissioner*, 482 F.3d 873, 876 (6th Cir. 2007); *see also Louden v. Commissioner*, 507 F. App'x 497, 498 (6th Cir. 2012); *Kornecky v. Commissioner*, 167 F. App'x at 506-07. Because they were not treating psychologists, the ALJ was not "under any special obligation to defer to their opinion[s] or to explain why [s]he elected not to defer to [them]." *Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir. 2011).

Very little evidence was generated by Psychologists Baird, King, and Schirado. Baird and King each saw plaintiff on one occasion, and Schirado never had direct contact. On October 6, 2009, Psychologist Baird performed a consultative evaluation on a referral from the Social Security Administration. (Page ID 346-51). Plaintiff "provided his own transportation to the interview. He arrived on time." (Page ID 348). Plaintiff related that he lived in an apartment with his three girls, then ages 14, 11, and 8. (Page ID 346-47). He was oriented to person, place and time. (Page ID 348). He "denie[d] any history of being prescribed an anti-depressant medication or anti-anxiety or any other psychotropic medication. He denie[d] any history of mental health counseling services." (Page ID 346). He had no history of psychiatric hospitalization and had no history of suicidal gestures. (Page ID 347). Baird noted that plaintiff's "longest job was working as a welder for 23 years." (Page ID 347). Plaintiff appeared to be of average intelligence. His stream of mental activity was slow but organized. He did not appear to be responding to internal stimuli. His

---

[8]Plaintiff makes no attempt to engage the ALJ's findings stemming from the progress notes provided by plaintiff's treating physician, Karla Hemphill Harris, D.O. In August 2011, Dr. Hemphill Harris observed that plaintiff did not exhibit any unusual anxiety or depression. (Op. at 8, Page ID 49; *see* Page ID 436, 446). In October 2011, Dr. Hemphill Harris found that plaintiff was alert, oriented, and negative for psychiatric symptoms such as anxiety or depression. Plaintiff reported that he was "doing pretty well." (Op. at 8, Page ID 49; *see* Page ID 450-51). Dr. Hemphill Harris is not mentioned in plaintiff's brief or reply brief.

clothing was clean and his hygiene was intact. (Page ID 348). Plaintiff told Baird that he had his first thoughts of suicide in 2006 and had experienced such thoughts every two months. When Baird questioned plaintiff about hallucinations or delusions, plaintiff responded that he thought he heard voices "approximately once per week." (Page ID 348). Plaintiff stated, "I feel like I don't have a life. All I do is cook and take care of the kids. There's so much to do and I am only one person." (Page ID 347). Baird noted, "Claimant describes crying approximately once per week. He reports insomnia, poor appetite, compromised concentration, forgetfulness, decreased sex drive, and heightened irritability. Claimant reports there has been no improvement in symptomatology in the past three years." (Page ID 347). Based on this interview, Psychologist Baird offered a diagnosis of a major depressive disorder, severe with psychotic features and a generalized anxiety disorder. Baird gave plaintiff a GAF score of 40 and recommended that he participate in mental health counseling and explore treatment with prescription medication through a prescribing physician. (Page ID 359).

On October 26, 2009, Psychologist Schirado reviewed plaintiff's medical records and completed a mental residual functional capacity assessment. (Page ID 352-69). Schirado offered his opinion that plaintiff was capable of performing simple, unskilled, routine and repetitive work and gave the following explanation in support of his opinion:

> The clmt [claimant] has a treating source for mental allegations; however, the source has failed to respond to our request. Clmt attended recent MSE [mental status evaluation] where he discusses constant worry, is a single father of three children. Clmt is currently not on any medication. Clmt was cooperative, slow but organized. Clmt c/o [complained of] hearing voices once per week. Depressed. Clmt does hh [household] chores, takes care of children, needs reminders, shops for a long time, forgetful. The clmt allegations regarding current limitations are partially credible in that exam and adls [activities of daily living] do not support c/o [complaints of] 5 min. attn span; and adls are consistent with ability to sustain SRR [simple routine repetitive] tasks with adequate pace.

> Capable of independently understanding and remembering SRR tasks. Persistence, sustain concentration and adaption are adequate for SRR tasks. Able to make simple work related decision. Able to interact adequately with coworkers and supervisors without extremes.

(Page ID 354).

On December 15, 2009, Psychologist King conducted a consultative evaluation. Plaintiff reported that he was not taking any medications. (Page ID 402). He "drove himself to the evaluation session. He arrived on time for his scheduled appointment. He was cooperative during the evaluation session and was able to follow directions and instructions with no observed difficulty." (Page ID 402). "Regarding historical information, his recollection appeared to be relatively accurate. He did not appear to have any difficulty in recalling dates or situations." (Page ID 402). Plaintiff stated that he had received "counseling" from 1983 to 2008. He stated that he was taking Prozac prescribed by his physician. (Page ID 402). Plaintiff stated that he heard his children talking when they were away at school and also heard the voice of their deceased mother. (Page ID 402). He indicated that he had custody of his three children, ages 16, 12 and 9. He graduated from high school with support from special education services in math and reading. Plaintiff reported that he was raising his daughters without assistance. He stated, "I am able to do the laundry, cook meals, and clean things." He stated that the stress of his life caused him to be forgetful in taking care of activities of daily living. (Page ID 403). King stated that plaintiff appeared to be preoccupied with his physical and emotional difficulties. King offered a diagnosis of a pain disorder associated with both psychological factors and a general medical condition (chronic), major depressive disorder, recurrent, moderate, generalized anxiety disorder, moderate, mental retardation, and schizotypal personality disorder. King gave plaintiff a GAF score of 46 (Page ID 406) and completed RFC questionnaire in which he offered opinions that, since May 8, 2009, plaintiff had extreme restrictions

in his ability to understand and remember detailed instructions, behave in an emotionally stable manner, demonstrate reliability, and maintain concentration, persistence, or pace. (Page ID 407-09).

Plaintiff argues that the ALJ should have given more weight to the low GAF score provided by Psychologist Baird. (Plf. Brief at 10-11, 13, Page ID 474-75, 477). As shown in section 1, GAF scores are subjective and are not entitled to any particular weight. The ALJ noted that a GAF score of 40 would "suggest some impairment in reality testing or communication or major impairment in several areas." (Op. at 10, Page ID 51). Further, she observed that such scores are at best a snapshot of the claimant's condition on the date of the evaluation and are subjective. (*Id.*). Although plaintiff told Baird that he heard voices, the complaint was not supported by treatment records. (*Id.*). I find no merit in plaintiff's argument that the ALJ improperly applied more rigorous scrutiny to Baird's GAF score due to the fact that Baird had only examined plaintiff on one occasion, yet "fail[ed] to mention that the opinion of the non-examiner was provided without ever meeting Mr. Jones." (Plf. Brief at 13, Page ID 477). This case bears no resemblance to *Gayheart* where the ALJ unfairly criticized a treating physician's opinion and utterly ignored a consultative examiner's "stark change in opinion," where at one hearing the examiner gave "unequivocal testimony" that Gayheart "met Listing 12.06 for anxiety disorders," and in a subsequent hearing testified that "there was insufficient evidence to show that a mental listing was met or equaled." 710 F.3d at 379. Here, plaintiff has not identified any remotely-similar error. GAF scores are snapshots by nature and are of limited utility because they are subjective. The Sixth Circuit has never held that an ALJ commits error by failing to reiterate what is obvious from context: a non-examining source does not have an examining relationship with the claimant.

Similarly, plaintiff's argument regarding the relevance of the ALJ's observation that Schirado was a trained psychological consultant with acquired expertise in evaluating claimants' impairments under the Social Security Act and Regulations is devoid of merit. (Plf. Brief at 13-14, Page ID 477-78) (citing Op. at 9. Page ID 50). Psychologist Schirado's opinion that plaintiff was capable of performing simple, routine, repetitive tasks was not "irrelevant." (Plf. Brief at 13-14, Page ID 477-78). Plaintiff is correct that the issue of RFC is reserved to the Commissioner, but the ALJ was free to consider Schirado's opinions and determine what weight, if any, they should be given. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Commissioner*, No. 1:12-cv-2219, 2013 WL 5467172, at * 5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also Brooks v. Commissioner*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").

Plaintiff is incorrect when he claims that the ALJ gave "controlling weight" to the opinion of a non-examiner. (Plf. Brief at 11, Page ID 475). The ALJ did not give controlling weight to any opinion Schirado expressed. Further, it appears that the ALJ's factual finding regarding plaintiff's RFC included more stringent limitations on plaintiff's interaction with others than Schirado suggested. The ALJ limited plaintiff to work involving only "occasional contact with supervisors and coworkers" and "no contact with the general public." (Op. at 6, Page ID 47).

-18-

Plaintiff argues that the ALJ should have given greater weight to Psychologist King's opinions. (Plf. Brief at 9-11, 13, Page ID 473-75, 477). As a consultative examiner, King's opinions were not entitled to any particular weight. *Karger v. Commissioner*, 414 F. App'x at 744. Plaintiff is correct that an examining relationship is one of the factors that an ALJ should consider when weighing medical opinions.[9] *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also McClean v. Colvin*, No. 3:11-cv-236, 2013 WL 4507807, at * 8 (M.D. Tenn. Aug. 23, 2013) ("[R]espective examining and non-examining status [is] only one of several relevant factors[.]"). Consistency is another important factor: "Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The ALJ found that Schirado's opinion was more consistent with the record as a whole. (Op. at 9, Page ID 50). The ALJ found that King's opinions that plaintiff was unable to work or disabled were entitled to no weight because the issue of disability is reserved to the Commissioner. (Op. at 11, Page ID 52). The ALJ noted that plaintiff's report to King that he had received "counseling from 1983 to 2008" conflicted with what he told both Dr. Baird and Dr. Lazarra. (Op. at 7, Page ID 48). Further, he observed that King's statements regarding plaintiff's "high number of physical symptoms" was "without support from the medical evidence or the record as a whole, including the claimant's testimony that he [did] not have any physical limitations. (*Id.*).

The restrictions that King suggested were undermined by King's own observations that plaintiff was "cooperative, receptive to test instructions, and able to follow and understand directions without difficulty." (*Id.*). The extreme restrictions suggested by King were not persuasive in light of plaintiff's ability to provide care for three children without assistance. (Op. at 11, Page ID 52).

---

[9]"Generally, we give more weight to the opinion of a source who has examined you than the opinion of a source who has not examined you." 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).

-19-

The ALJ is responsible for weighing conflicting evidence. *See Buxton*, 246 F.3d at 775; *see also Reynolds v. Commissioner*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").

I find no error in the weight the ALJ determined was appropriate for the opinions found in this administrative record.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:  January 28, 2015                /s/  Phillip J. Green
                                        United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).